# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

In re:  )
 )
UNITED AIR LINES, INC.,  )
 )
    Debtors.  )
 )
―――――――――――――――――――  )
 )
AIR LINE PILOTS ASSOCIATION  )
INTERNATIONAL, UNITED RETIRED  )   Case No. 05 C 6955
PILOTS BENEFIT PROTECTION  )
ASSOCIATION, ROGER D. HALL,  )   Honorable John W. Darrah
DENNIS D. DILLON, GERALD TERSTIEGE,  )
EUGENE M. CUMMINGS,  )
RAYMOND P. FINK, JAMES M. KRASNO  )
and WILLIAM L. RUTHERFORD,  )
 )
    Appellant and Cross-Appellees,  )
 )
v.  )
 )
PENSION BENEFIT GUARANTY CORP.,  )
 )
    Appellee and Cross-Appellant.  )
 )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the appeal and cross-appeal of the final judgments of the Bankruptcy Court of October 26 and October 28, 2005. For the reasons that follow, the decisions of the Bankruptcy Court as to the October 26 and October 28, 2005 orders are reversed.

## BACKGROUND

United Air lines, Inc. provides many of its employees pension benefits under defined benefit pension plans. One of these defined plans is the United Air Lines Pilot Defined Benefit Pension Plan ("the Pilot Plan"). United is the plan sponsor and administrator. The Air Line Pilots Association

("ALPA") is the union that represents United's active pilots. The United Retired Pilots Benefit Protection Association ("URPBPA") is an Illinois non-profit corporation which was formed by a group of retired United pilots to protect the retirement benefits of pilot retirees, survivors, and dependants. Roger Hall, Dennis D. Dillon, Gerald Terstiege, Eugene M. Cummings, Raymond P. Fink, James M. Krasno, and William L. Rutherford are retired United Captains who serve on URPBPA's Board of Directors.

The Pension Benefit Guaranty Corporation ("PBGC") is a wholly-owned United States government corporation established under 29 U.S.C. § 1302(a) to administer the pension plan termination insurance program established by Title IV of the Employee Retirement Income Security Act ("ERISA"). The PBGC guarantees the payment of certain, but not all, pension benefits provided by defined benefit pension plans that are covered by Title IV of ERISA.

On December 9, 2002, United filed a voluntary petition under Chapter 11 of Title 11, United States Code. In November 2004, United stated that it would seek the termination of the Pilot Plan and its other defined pension plans via a two-step process. First, United would attempt to satisfy the requirements of 11 U.S.C. § 1113 and remove any contractual obligations that required United to maintain the Pilot Plan. Second, United would attempt to satisfy ERISA's requirements for distress termination.

On November 24, 2004, United initiated negotiations with ALPA regarding the Pilot Plan. After URPBPA sought to be included in the negotiations related to the Pilot Plan, and United refused to include URPBPA in these discussions, URPBPA filed a motion with the Bankruptcy Court, requesting the appointment of an authorized representative to represent United's retired pilots and

their pension benefits. The Bankruptcy Court denied URPBPA's motion, and that order is on appeal before the Seventh Circuit Court of Appeals.

As a result of their negotiations, United and ALPA reached a Section 1113 Agreement. On December 17, 2004, United filed a Motion to Approve Letter of Agreement Modifying Their Collective Bargaining Agreement with ALPA. United's initial motion was denied. Subsequently, United filed for approval of a modified version of the agreement. Both the original and modified versions of the agreement provided, in pertinent part, that ALPA would not "oppose the Company's efforts to terminate the A Plan under 29 U.S.C. § 1341(c)" as long as United did not seek to terminate the Pilot Plan before May 2005. Both versions also provided that the Pilot Plan would "remain in full force and effect" until United met the requirements for a distress termination under 29 U.S.C. § 1341, and that nothing in the Letter of Agreement "shall be construed, deemed or characterized by UAL or the Company as any agreement of any form by the Association that the A Plan should be terminated."

On December 29, 2004, the PBGC sent a Notice of Determination to Glenn Tilton (United's Chairman, President and CEO, informing Tilton that PBGC had determined that the Pilot Plan "must be terminated because the possible long-run loss of the corporation with respect to the Plan may reasonably be expected to increase unreasonably if the Plan is not terminated." PBGC stated that the effective date of the termination would be December 30, 2004.

On December 30, 2004, PBGC filed a Complaint in the United States District Court for the Northern District of Illinois, pursuant to 29 U.S.C. §§ 1342 and 1348(a), seeking: (1) an order terminating the Pilot Plan sponsored by United; (2) appointing PBGC as the statutory trustee

of the Pilot Plan; (3) establishing December 30, 2004 as the termination date of the Pilot Plan; and (4) requiring that United convey all relevant documents to PBGC. PBGC's Complaint, Civil Case No. 04 C 8338, was assigned to Judge Joan Lefkow.

On January 4, 2005, United moved for referral of the termination action to the Bankruptcy Court. On January 6, 2005, PBGC filed it opposition to the referral to the Bankruptcy Court and, in the alternative, sought to withdraw the reference. Shortly thereafter, ALPA and URPBPA sought to intervene in the District Court action. On January 25, 2005, Judge Lefkow granted United's motion to confirm the automatic referral of the case to the Bankruptcy Court and denied PBGC's motion to withdraw the reference. During the hearing, Judge Lefkow agreed with PBGC's counsel that the termination proceeding was a non-core proceeding.[1] The motions to intervene were also referred to the Bankruptcy Court. PBGC moved for reconsideration of the referral to the Bankruptcy Court or, in the alternative, for a certification to file an interlocutory appeal. The motion remains pending.

On April 13, 2005, the Bankruptcy Court ruled that discovery beyond the administrative record would be permitted. On June 6, 2005, PBGC filed a motion for summary judgment, arguing that PBGC's decision to seek termination of the Pilot Plan was entitled to judicial deference and that its decision to initiate termination had not been arbitrary or capricious. PBGC also argued that it had provided sufficient notice to the plan participants to set the termination date as December 30, 2004. United, ALPA, and URPBPA opposed PBGC's motion for summary judgment.

---

[1] Ms. Hermans: – and that is of judicial economy. Counsel for United is confused. The – the bankruptcy court – because this is a non-core proceeding, and clearly it is, it does not arise only in the context of a bankruptcy court –
The Court: I agree with you.

On August 26, 2005, the Bankruptcy Court issued a preliminary ruling on PBGC's motion for summary judgment. On October 26, 2005, the Bankruptcy Court issued an Amended Memorandum of Decision on Motion for Summary Judgment. The Bankruptcy Court ruled that PBGC's adversary proceeding was a core proceeding; therefore, the Bankruptcy Court entered final judgment. As to the merits of the motion, the Bankruptcy Court held that a trial was required as to whether PBGC established the propriety of terminating the Pilot Plan by a preponderance of the evidence. The Bankruptcy Court held that Section 1342(c) required a *de novo* determination of the appropriateness of the Pilot Plan termination, and not a deferential review under the Administrative Procedures Act. The Bankruptcy Court also held that the constructive notice to the Pilot Plan participants was sufficient to establish a termination date of December 30, 2004.

A bench trial on PBGC's Complaint was commenced on September 21, 2005. On October 26, 2005, the Bankruptcy Court issued its Memorandum of Decision. The Bankruptcy Court held that PBGC showed that continued operation of the Pilot Plan beyond December 30, 2004, would result in an unreasonable increase in PBGC's liability of its fund; therefore, PBGC was entitled to a decree terminating the Pilot Plan pursuant to 29 U.S.C. § 1342(c) as of December 30, 2004. On October 28, 2005, the Bankruptcy Court entered its order terminating the Pilot Plan retroactive to December 30, 2004.

On November 4, 2005 and November 7, 2005, respectively, ALPA and URPBPA filed notices of appeal. On November 16, 2005, PBGC filed its cross-appeal. The parties' appeals of the Bankruptcy Court's final orders were assigned to this Court, Civil Case No. 05 C 6955.

## LEGAL STANDARD

A bankruptcy court's interpretation of statute is a question of law reviewed *de novo*. *See Meyer v. Rigolon*, 30 F.3d 1375, 1378 (7th Cir. 1994). Similarly, a bankruptcy court's grant of summary judgment is reviewed *de novo*. *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003) (*Hoseman*). All of the facts and the inferences drawn therefrom are viewed in the light most favorable to the nonmoving party. *Hoseman*, 322 F.3d at 473. The court reviews the bankruptcy court's factual findings for clear error. *Hoseman*, 322 F.3d at 473.

## ANALYSIS

PBGC raises three issues on appeal: (1) the District Court erred in referring the termination proceeding to the Bankruptcy Court, (2) the Bankruptcy Court erred in finding the termination was a core proceeding, and (3) the Bankruptcy Court erred by holding a *de novo* trial. In its response brief to PBGC's appeal, URPBPA joins in PBGC's argument that the Bankruptcy Court did not have jurisdiction (PBGC's first two grounds of appeal) to enter a final order in the adversary proceeding. United argues, *inter alia*, that PBGC's cross-appeal should be dismissed as untimely.

Pursuant to 28 U.S.C. § 158, a party may appeal the final judgment of a bankruptcy court to an appropriate district court. The notice of appeal must be filed with the clerk within ten days of the date of the entry of the judgment, order, or decree being appealed. Fed. R. Bank. P. 8002(a). However, if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within ten days of the date of which the first notice of appeal was filed. Fed. R. Bank. P. 8002(a). The time frames prescribed by Rule 8002(a) are conditions precedent that are mandatory and jurisdictional. *See In re Bond*, 254 F.3d 669, 673 (7th Cir. 2001).

Here, the Bankruptcy Court entered the termination order on October 28, 2005. ALPA filed a timely notice of appeal on November 4, 2005. However, PBGC did not file its appeal until November 16, 2005 – twelve days after the first notice of appeal was filed. Accordingly, PBGC's cross-appeal is untimely and is dismissed.

However, PBGC, as cross-appellant and appellee, and URPBPA (including the individual intervenors) raise issues of the Bankruptcy Court's jurisdiction, which may be raised at any time, including during the appeal. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). Accordingly, PBGC and URPBPA's jurisdiction argument is addressed by the Court.[2]

PBGC and URPBPA argue that the Bankruptcy Court did not have jurisdiction to enter a final judgment in the termination proceeding because the termination was not a core proceeding.

Bankruptcy courts have jurisdiction to adjudicate and issue final orders and judgments in matters constituting core proceedings. *See* 28 U.S.C. § 157(b)(1). Although the statute does not define "core," Section 157(b)(2) sets forth a non-exclusive list of matters that constitute a core proceeding. This non-exclusive list includes "matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship . . . ." 28 U.S.C. § 157(b)(2)(O).

However, a non-core proceeding cannot be reclassified as a core proceeding by simply declaring that the matter either concerns the administration of the estate or affects the liquidation of the assets. *See In re Comdisco Ventures, Inc.*, 2004 WL 1375353 (N.D. Ill. June 18, 2004) (*In re*

---

[2]This Court has jurisdiction over the appeal of the Bankruptcy Court's final judgment. *See* 28 U.S.C. § 158(a). PBGC's appeal of the District Court's referral cannot be heard by this Court as this Court lacks jurisdiction over an appeal of another District Court's decision, and the Bankruptcy Court made no rulings as to this issue. Accordingly, this issue is not addressed by this Court.

-7-

*Comdisco*); *In re CIS Corp.*, 172 B.R. 748, 757 (S.D.N.Y. 1994) (*In re CIS*). Instead, "a proceeding is core . . . if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990) *quoting In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987). In slightly different terms, the Seventh Circuit has defined core proceedings as:

> actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law . . . . The fact that it is an *important* right to the bankrupt . . . is irrelevant.

*In re U.S. Brass Corp*, 110 F.3d 1261, 1268 (7th Cir. 1997).

Bankruptcy courts may also hear non-core proceedings that are otherwise related to the bankruptcy case. *See* 28 U.S.C. § 157(c)(1). The bankruptcy court's jurisdiction to hear non-core proceedings is limited. *See In re Hanno*, 254 B.R. 732, 738 (N.D. Ill. 2000); *In re Markos Gurnee Partnership*, 182 B.R. 211, 220 (N.D. Ill. 1995). In non-core proceedings, which are also undefined in the statute, the bankruptcy court may issue findings of fact and conclusions of law but is not empowered to issue final orders unless the parties consent to the bankruptcy court's issuing a final order. *See* 28 U.S.C. 157(c). The bankruptcy court's findings of fact and conclusions of law are then reviewed *de novo* by the district court. *See* 28 U.S.C. 157(c)(1).

Here, PBGC brought a proceeding to terminate the Pilot Plan in district court pursuant to Title IV of ERISA, 29 U.S.C. § 1342(a)(4), (c). Title IV of ERISA is the exclusive means of terminating a defined benefit pension plan. 29 U.S.C. § 1341(a)(1); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999). Termination proceedings may be filed notwithstanding any

-8-

pending bankruptcy proceeding. 29 U.S.C § 1342(e). PBGC brought the proceeding against United as the plan administrator, not as the debtor in the pending bankruptcy.

PBGC's right to initiate the termination proceeding of the Pilot Plan arises exclusively from Title IV of ERISA, not the Bankruptcy Code. *See* 29 U.S.C. §§ 1341(a); 1342(a). The right to bring the termination proceeding exists outside the Bankruptcy Code and can arise outside the context of a bankruptcy case. *See* 29 U.S.C. § 1342(a). Accordingly, the termination proceeding neither invokes a substantive right provided by Title 11 nor, by its nature, could it arise only in the context of a bankruptcy case.

In light of the above, United, the only party that contends that the proceeding was a core proceeding, argues that the involuntary termination proceeding was a core proceeding because whether and when the Pilot Plan was terminated affected PBGC's claim that arose once the Pilot Plan was terminated; therefore, the termination proceeding affected the administration of the estate and/or the debtor-creditor relationship. However, the mere fact that the proceeding may ultimately affect the size of the estate does not mandate that the proceeding is a core proceeding. *See Diamond Mortgage Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990) (malpractice and breach of contract suit resolution which may have a direct and substantial impact on the asset pool available for distribution to the estate was a non-core proceeding); *In re State Brass*, 110 F.3d at 1268-69 (fact that bankrupt party was seeking $500 million in insurance coverage that could affect size of estate did not turn state contract law claim relating to the insurance coverage into a core proceeding); *In re CIS*, 172 B.R. at 757 (legal proceeding that could determine that the debtors were the legal titleholders to certain property, while benefitting the bankrupt estate, was insufficient to make the proceeding a core proceeding); *In re Comdisco*, 2004 WL 1375353 at * 4 (claims that might benefit

debtor estate that did not constitute a substantive right granted by Title 11 constituted non-core proceedings).

Furthermore, any additional effect on the debtor-creditor relationship is tenuous. The termination proceeding was brought by PBGC as the federal agency that enforces Title IV of ERISA, not in the role of a creditor. In addition, United is a party to the proceeding not as the debtor but as the plan administrator. Had a person or entity other than United been the plan administrator, United would not have been a party to the proceeding. In addition, while the termination proceeding may ultimately affect United's bankruptcy case, it does not concern the administration of the estate or involve estate assets within the meaning of Section 157(b)(2) of the Bankruptcy Code because plan assets are not part of a bankruptcy estate. *See Patterson v. Shumate*, 504 U.S. 753, 760 (1992).

Based on the above, the termination proceeding filed by PBGC pursuant to Title IV of ERISA was a non-core proceeding. Because the proceeding was a non-core proceeding and the parties did not consent to the Bankruptcy Court's issuing a final judgment, the Bankruptcy Court exceeded its limited jurisdiction by issuing a final judgment instead of submitting proposed findings of fact and conclusions of law to the district court (in this instance, Judge Joan Lefkow in Civil Case 04 C 8338), as required by Section 157(c)(1). Accordingly, the October 26 and October 28, 2005 final judgments of the Bankruptcy Court are reversed; and the case is remanded for proceedings consistent with 28 U.S.C. 157(c).

In light of the above ruling, ALPA and URPBPA's appeals are dismissed as moot.

## CONCLUSION

Based on the foregoing, the October 26 and October 28, 2005 final orders of the Bankruptcy Court are reversed; and the case is remanded for proceedings consistent with 28 U.S.C. 157(c). PBGC's appeal is dismissed as untimely. ALPA and URPBPA's appeals are dismissed as moot.

Dated: February 2, 2006

John W. Darrah
United States District Court Judge